Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHELLE C. CANTATORE,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil Action No. 18-14293 (ES)

OPINION

SALAS, DISTRICT JUDGE

Petitioner Michelle C. Cantatore, a prisoner currently confined at the Federal Correctional Institute in Danbury, Connecticut, moves to vacate, correct, or set aside her federal sentence pursuant to 28 U.S.C. § 2255.  (D.E. No. 1; *see also* D.E. No. 1-1, Brief ("Mov. Br.")).  Respondent United States of America opposes the motion.  (D.E. No. 9).  For the following reasons, the motion is **DENIED** and a certificate of appealability shall **NOT ISSUE**.

## I.    BACKGROUND

On or about April 13, 2016, by way of information, Petitioner was charged with bank robbery in violation of 21 U.S.C. § 2113(a) and 2, and wire fraud in violation of 21 U.S.C. § 1343 and 2.  (D.E. No. 1-2, Appendix ("App'x") at 14–15).[1]  The following facts are what gives rise to those charges.

In 2014, Petitioner met and befriended A.V., who was inpatient with Petitioner's father at Tree Tops Rehabilitation and Care Center.  (Presentence Report ("PSR") ¶¶ 11–12).  Following A.V.'s release from the facility in September 2014, Petitioner began to visit him at his residence.

---

[1]    When citing to the Appendix, the Court relies on the pagination automatically generated by the CM/ECF.

(*Id.* ¶ 12).  During one of her visits, Petitioner asked to borrow $3,000 from A.V.  (*Id.*).  A.V. obliged, and Petitioner repaid him a few weeks later.  (*Id.*).  Petitioner later asked A.V. for a $16,000 loan.  (*Id.* ¶ 13).  But he refused, so Petitioner stole several checks from him.  (*Id.* ¶¶ 13, 15 & 19).  Petitioner ordered an additional checkbook for A.V.'s brokerage account and intercepted it before its arrival at his residence.  (*Id.* ¶¶ 16 & 19).  In total, Petitioner wrote eight checks totaling $198,750.00 against A.V.'s brokerage account.  (*Id.* ¶ 19).

On January 30, 2015, Petitioner entered Greenwich Bank and Trust Company and pointed a large black gun at a teller, A.C.; announced, "This is a fucking robbery"; and demanded money. (*Id.* ¶ 21).  Unsatisfied with the amount of money the teller placed in her bag, Petitioner said, "That's not enough."  (*Id.*).  She then repeated, "No dye packs, I'll fucking shoot you." (*Id.*).  Still unsatisfied, Petitioner continued to threaten to shoot A.C.  (*Id.* ¶ 22).  After telling A.C. to empty another drawer, Petitioner yelled at another teller, J.Y., to lay down on the ground and threatened to kill her if she moved.  (*Id.*).  A.C. emptied another money drawer into Petitioner's bag.  (*Id.*). In total, Petitioner stole $13,714.00 from Greenwich Bank and Trust Company.  (*Id.* ¶ 23).

On February 18, 2015, Petitioner, wearing a wig and sunglasses, entered Glen Rock Savings Bank and shouted: "Put your hands up.  This is for real.  This is a robbery.  I have a gun." (*Id.* ¶¶ 24–25).  Petitioner immediately drew a large black gun and approached teller, L.E., and ordered her out of her office and instructed her not to look at Petitioner's face.  (*Id.* ¶ 25).  Petitioner yelled, "Give me all your money or I will fucking kill you!"  (*Id.*).  Petitioner demanded the hundred-dollar bills from the vault.  (*Id.*).  After receiving the hundred-dollar bills, Petitioner demanded what remained in the vault.  (*Id.* ¶ 26).  Petitioner then proceeded to the teller stations and removed the hundred-dollar bills from one unlocked drawer.  (*Id.*).  Before leaving, Petitioner ordered bank employees to remain in the vault for five minutes.  (*Id.*).  A search of the surrounding

area uncovered a black paintball gun. (*Id.*). The paintball gun matched the gun in the bank surveillance video. (*Id.*). In total, Petitioner stole $112,900.00 from the Glen Rock Saving Bank. (*Id.*).

On February 24, 2015, Petitioner entered JP Morgan Chase Bank, wearing a bright yellow jacket with the hood on her head and dark sunglasses. (*Id.* ¶ 27). Petitioner approached E.Y.; took a gun out of her bag; pointed it at E.Y.; and demanded that E.Y., teller A.D.L., and bank manager A.S. proceed to the vault. (*Id.*). Petitioner advised the employees that "they" followed them and knew where the employees lived. (*Id.*). Petitioner threatened that if any dye packs or alarms were pulled, "they" would come to their houses, kill the employees, and burn their houses down. (*Id.*). The employees emptied the contents of the vault and one of the cash drawers into Petitioner's bag. (*Id.*). In total, Petitioner stole $164,428.00 from JP Morgan Chase Bank. (*Id.* ¶ 28).

The similarities of the above three robberies led law enforcement to create a investigative task force. (*Id.* ¶ 29). The task force gathered evidence and learned that Petitioner used her cellphone around the location of each robbery at the time of each robbery. (*Id.*).

On March 6, 2015, Petitioner was arrested at a hotel in Atlantic City. (*Id.*). A search of her hotel room uncovered $84,955.00. (*Id.*). Petitioner admitted that she obtained paintball guns at Dick's Sporting Goods. (*Id.*). Law enforcement never recovered any real firearms and concluded that she used paintball guns in the robberies. (*Id.* ¶¶ 29–30).

On April 13, 2016, pursuant to her plea agreement, Petitioner pled guilty to one count of bank robbery and one count of wire fraud. (App'x at 20–36 & 88–127). Petitioner's plea agreement included, among other things, a stipulation waiving any appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255. (*Id.* at 26).

Petitioner's PSR calculated her at a total offense level of 28, a criminal history score of 10, and a criminal history category of V.  (PSR ¶¶ 83 & 108–109).  Petitioner's criminal history included multiple convictions for burglary, robbery, and fraud.  (*Id.* ¶¶ 95–107).  Petitioner's total offense level and criminal history category resulted in a sentencing guidelines range of 130 to 162 months.  (*Id.* ¶ 150).

Defense counsel submitted a sentencing memorandum to the Court in advance of the sentencing hearing and a report of Stephen Block, an expert of compulsive gambling.  (App'x at 38–56, 62–74).  At Petitioner's sentencing on September 7, 2016, defense counsel argued that certain mitigating factors should influence the Court's decision, including that Petitioner suffered abuse from her alcoholic mother, that she abused drugs and alcohol, that she was addicted to gambling, and that she was a sexual assault survivor.  (*Id.* at 138–142).  Defense counsel's arguments echoed the mitigating arguments of the detailed sentencing memorandum.  (*Id.* at 38–56).  Defense counsel also stated that she was not seeking a downward variance or departure.  (*Id.* at 131–132).

Prior to sentencing, the Court expressed that it was "wrestling with the idea of an upward variance in this case.  And if [sentencing counsel has] done anything for [Petitioner] at the end of today's proceeding, it is managing to convince [the Court] not to exercise [its] discretion and go upward in this case."  (*Id.* at 132).  When fashioning its sentence, the Court considered the nature of the offenses and Petitioner's personal history, acceptance of responsibility, and remorse.  (*Id.* at 167–177).  Ultimately, the Court sentenced Petitioner to the high-end of the guidelines range—162 months.  (*Id.* at 178).

Petitioner filed a timely direct appeal, but counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing that there were no non-frivolous bases for

appeal.  *See United States v. Cantatore*, 706 F. App'x 86, 87 (3d Cir. 2017).  Despite having the opportunity to do so, Petitioner did not file a *pro se* brief.  *Id.*  The Third Circuit granted counsel's motion to withdraw and affirmed the judgment of this Court, finding that there were no issues of arguable appeal.  *Id.* at 88–89.

Petitioner filed the instant motion on September 26, 2018, to vacate, set aside, or correct her conviction or sentence under 28 U.S.C. § 2255.  (D.E. No. 1).  Respondent filed its full answer on February 28, 2019.  (D.E. No. 9).  Petitioner filed a reply on August 25, 2020.  (D.E. No. 30 ("Reply")).  The matter is fully briefed and ready for disposition.

## II.     LEGAL STANDARDS

### A.     Section 2255 Standard

Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief.  28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

### B.     Ineffective Assistance of Counsel

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  First, Petitioner must show that "counsel's performance was deficient," which means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id.* at 687.  Specifically, counsel's performance is deficient if counsel's representation falls "below an objective standard of reasonableness." *Id.* at 688.  In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  As such, "the petitioner bears the burden of showing that counsel's challenged action was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Next, Petitioner must show that the deficient performance prejudiced her.  *Strickland*, 466 U.S. at 687.  Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Where, as here, the petitioner entered into a guilty plea, she "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

With respect to the sequence of the two prongs, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.  Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010).

Finally, courts deciding an ineffectiveness claim must consider the facts of the case at the time of counsel's conduct and must make every effort to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

III.     **ANALYSIS**

Petitioner raises three grounds for relief: (i) defense counsel was ineffective for not fully investigating or presenting Petitioner's post-traumatic stress disorder ("PTSD") and/or diminished capacity in a motion for a downward variance; (ii) defense counsel was ineffective for permitting the Court to erroneously calculate a criminal history score of ten; and (iii) defense counsel was ineffective for not raising and arguing that there was an unconstitutional sentencing disparity between Petitioner and similarly situated bank robbers.  (Mov. Br. at 22, 34 & 37).  The Court finds that Petitioner's claims do not warrant relief.

A.     **Diminished Capacity (Ground One)**

In her first ground for relief, Petitioner argues that counsel was ineffective for not fully investigating Petitioner's PTSD and diminished capacity and for not fully presenting both in a motion for a downward variance.  (Mov. Br. at 22–34).  Petitioner argues that counsel failed to perform an adequate investigation and consult with mental health experts, that her troubled upbringing and her sexual assault are evidence of PTSD and diminished capacity, and that counsel was ineffective for depriving the Court of mitigating evidence necessary for a meaningful sentencing hearing.  (*Id.* at 24 & 30).

After Respondent filed its answer in this matter, appellate counsel enlisted the assistance of Dr. Grigory S. Rasin, M.S., a psychiatrist, for a psychiatric examination and attached Dr. Rasin's report to Petitioner's reply brief.  (Reply at 34–40).[2]  Dr. Rasin reviewed Petitioner's case file and met with Petitioner for a face-to-face examination.  (*Id.*).  In his report, Dr. Rasin diagnosed Petitioner with PTSD (residual), gambling disorder (in remission), alcohol dependence (in remission), cocaine dependence (in remission), and attention deficit hyperactivity disorder (by

---

[2]     When citing Petitioner's reply brief, docket entry number 30, the Court relies on the pagination automatically generated by CM/ECF.

history).  (*Id.* at 38).  Dr. Rasin opined that any of these "conditions lead to impaired judgment, diminished insight, inability to control impulses, and cognitive impairment."  (*Id.* at 39).

Under the "highly deferential" standard of review, the Court cannot say that counsel's conduct fell below the "wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  As a general rule, "a failure to present cumulative evidence does not render counsel's performance ineffective under *Strickland*."  *Danner v. Cameron*, 564 F. App'x 681, 685 (3d Cir. 2014); *Gaines v. D'ilio*, No. 15-0761, 2019 WL 851592, at *10 (D.N.J. Feb. 22, 2019).  Defense counsel's detailed sentencing memorandum explained Petitioner's personal history and her difficulties.  (App'x at 38–56).  The memorandum pointed out that Petitioner suffered abuse at the hands of her alcoholic mother, who failed to provide Petitioner with basic necessities.  (*Id.* at 46). Defense counsel noted that Petitioner began to abuse substances as a teenager and her addiction spanned more than 40 years.  (*Id.*).  The memorandum also noted that Petitioner developed a serious gambling addiction.  (*Id.* at 48).  The memorandum explained that after finally obtaining a steady job and income, Petitioner was raped in 2012, causing her significant pain and anxiety and causing her to abuse drugs and alcohol and to gamble.  (*Id.*).  The memorandum explained that Petitioner "was unable to avoid replaying the rape in her head over and over."  (*Id.*).  The memorandum also discussed the expert report regarding Petitioner's gambling addiction, in which Stephen Block opined that Petitioner's gambling disorder led her to employ "impaired judgment and diminished insight."  (*Id.* at 50).  Finally, the memorandum linked Petitioner's sexual assault to her gambling addiction—explaining that she "was unable to escape the trauma of the rape she endured, unless she gambled."  (*Id.*).  Defense counsel asked the Court to sentence Petitioner to the low-end of the guidelines sentence.  (*Id.* at 54).

As noted above, at the sentencing hearing, the Court considered an upward variance but chose not to impose one because of defense counsel's competent representation.  (*Id.* at 131–132).  The Court explained, "your client is a dangerous individual who has been committing crimes since the age of 12 years old, and the crimes at issue in this case were vicious."  (*Id.*).  Defense counsel reiterated to the Court everything she had laid out in her sentencing memorandum, including Petitioner's troubled childhood and 2012 sexual assault.  (*Id.* at 138–142).  After considering all of the factors, the Court sentenced Petitioner at the high-end of the guideline range.  The Court considered Petitioner's upbringing and 2012 sexual assault and found they did not offer mitigation.  (*Id.* at 174).  The Court explained: "They forever, just like you forever have to live with the rape and wh[at] it felt like when that man was raping you, these women have to live with what you did to them, how you brutalized them, how you tortured them . . . What happened to you, you did to others. It [] just doesn't offer any, in my mind, mitigation."  (*Id.*).  Finally, the Court discussed Petitioner's history and found: "The days of you receiving breaks are over.  No more excuses.  No more it is the gambling, no more[] it is the rape, no more[] it is my mom.  No more nothing.  There is very little I can say in mitigation.  I recognize you had a tough childhood . . . [but] [t]he answer is not to lash out, and the answer is not to victimize people over and over and over again since you [we]re twelve years old."  (*Id.* at 177).

Petitioner now presents a report of Dr. Rasin, in which he concludes that Petitioner suffered from PTSD and attention deficit hyperactive disorder resulting in "impaired judgment [and] diminished insight" (Reply at 39), and argues defense counsel was ineffective for not presenting this information to the Court prior to sentencing.  But defense counsel submitted substantially the same evidence—Defense counsel had presented the Court with the factors underlying Dr. Rasin's opinion.  Additionally, defense counsel presented the Court with the opinion of Stephen Block,

who opined that Petitioner suffered from "impaired judgment and diminished insight." (App'x at 50). The Court was aware of Petitioner's history, the trauma she endured from the sexual assault, and the opinion that Petitioner had "impaired judgment and diminished insight." Dr. Rasin's report is thus cumulative to the evidence presented by defense counsel and considered by the Court. Consequently, Petitioner has not demonstrated that counsel was deficient in failing to obtain a report from Dr. Rasin prior to sentencing. *See Danner*, 564 F. App'x at 685. Moreover, because the Court was clear it was considering an upward variance, Petitioner has not demonstrated that counsel's decision not to request a downward variance was outside of the range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89.

Even if Petitioner could show that counsel's conduct was deficient, she fails to demonstrate prejudice. "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Here, the Court was presented with a host of factors—aggravating and mitigating—before fashioning an appropriate sentence. As for aggravating factors, the Court spoke about the nature of the offenses, particularly how Petitioner victimized the bank tellers. (App'x at 174–175). Defense counsel presented the above discussed mitigating factors. Notwithstanding the detailed exploration of both mitigating and aggravating factors in the record, Petitioner argues that "the likelihood of a different result if the PTSD/diminished capacity evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing." (Mov. Br. at 24). But considering defense counsel's extensive discussion of Petitioner's history, the report of Stephen Block, and the comments from the Court regarding the desire to upward vary from the guidelines, the Court cannot agree. Petitioner has not demonstrated that the added report from Dr. Rasin would have affected the outcome of the proceeding in a manner that was beneficial to the Petitioner. Therefore, it is

unconvincing that an additional professional psychological report would have changed the outcome of Petitioner's sentence.

Accordingly, as Petitioner has not met either prong of Strickland, she is not entitled to relief on this claim.

### B.    Calculated Criminal History (Ground Two)

In her second ground for relief, Petitioner argues defense counsel provided ineffective assistance for not challenging Petitioner's criminal history category of V, which was based on an erroneous calculation, she says, of her criminal history score of ten.   (Mov. Br. at 34–37). Petitioner argues two of her convictions should have been considered a "single sentence" under the sentencing guidelines.  (*Id.*).  Petitioner argues that doing so would have resulted in a criminal history score of seven, not ten.  (*Id.*).

Under the sentencing guidelines, a defendant receives three criminal history points "for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a). "Prior sentence" means "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense."  U.S.S.G. § 4A1.2(a)(1).  Under § 4A1.2(a)(2) of the United States Sentence Guidelines, prior sentences are always counted if they are separated by an intervening arrest, but "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day," in which case they are treated as a "single sentence."

Relevant to Petitioner's claim here, the PSR assigned (i) three points for her conviction for attempted forgery in Westchester County Court, White Plains, New York—for which she was sentenced on April 17, 2001; and (ii) three points for her conviction for access device fraud in the United States District Court for the Southern District of New York—for which she was sentenced

11

on April 4, 2001.  (PSR ¶¶ 104 & 105).  Petitioner's conviction for attempted forgery stemmed

from her arrest on May 16, 2000.  (*Id.* ¶ 104).  The PSR indicates that Petitioner was arrested "on

May 16, 2000, for possession of a forged instrument, 2nd degree, and criminal possession of stolen

property, 5th degree, but this charge was consolidated for sentencing with her attempted forgery

2nd degree conviction."  (*Id.*).  The PSR also indicates that the May 16, 2000 arrest "is related to

[her] April 4, 2001, federal conviction."  (*Id.*).  Petitioner's conviction for access device fraud

stems from her arrest on July 24, 2000.  (*Id.*).

Petitioner argues that, because the PSR indicates that her conviction for attempted forgery

was "related" to conviction for access device fraud, the PSR should not have counted the two

convictions separately for purposes of calculating her criminal history score.  (*See* Mov. Br. at 34–

37).

The Court disagrees.  The two sentences resulted from different offenses contained in

separate charging instruments, *see* § 4A1.2(a)(2)(A)—one in Westchester County Court and the

other in the United States District Court for the Southern District of New York.  And she was

sentenced on different days, *see* § 4A1.2(a)(2)(B)—on April 4, 2001, for attempted forgery and on

April 17, 2001, for access device fraud.  Therefore, the PSR correctly counted these two

convictions separately under § 4A1.2(a)(2).

In her reply brief, Petitioner argues that "[t]he PCR very clearly states that the possession

of a forged instrument was consolidated with the criminal possession of stolen property, yet

separate criminal history points were assessed as to each arrest thereby demonstrating that the

criminal history was incorrectly calculated and overstated."  (Reply at 23).

However, separate criminal history points were *not* assessed for her charge of possession

of a forged instrument and her charge of criminal possession of stolen property.  The PSR makes

clear that those charges were consolidated with her conviction of attempted forgery.  (PSR ¶ 104).  For the attempted forgery conviction, Petitioner received three criminal history points, and for her separate conviction of access device fraud, Petitioner received three criminal history points.  (*Id.* ¶¶ 104–105).  Nothing in the PSR indicates that those two convictions merged.  (*Id.*).  And nothing in the PSR indicates that she received duplicative points for the charges that merged into her conviction for attempted forgery.

For the above reasons, the Court does not find that defense counsel was ineffective for not challenging the calculation of Petitioner's criminal history score.  *Werts v. Vaughan*, 228 F.3d 178, 203 (3d Cir. 2000) (holding that counsel cannot be found to be ineffective for declining to raise a meritless issue).

### C. Sentencing Disparity (Ground Three)

In her third ground for relief, Petitioner argues that defense counsel was ineffective for not raising an argument that her sentence was unconstitutionally long as compared to similarly situated bank robbers.  (Mov. Br. at 37–58).  Petitioner makes two arguments related to this claim.  First, she argues that defense counsel was ineffective for failing to object when the Court sentenced her to 162 months without properly considering the need to avoid unwarranted sentencing disparities.  (*Id.* at 37).  Second, she argues that defense counsel was ineffective for failing to advance a colorable argument at sentencing that a 162-month sentence constituted an unwarranted disparate sentence.  (*Id.*).  Thus, "in the first argument, [P]etitioner is arguing that [defense counsel] should have objected to this Court's discussion of the 18 U.S.C. § 3553(a) factors based on the arguments presented.  In the second argument, [P]etitioner asserts that [defense counsel] should have presented better arguments on the § 3553(a) factors (specifically § 3553(a)(6))."  (*Id.* at 38).  The Court will address these arguments in turn.

### i.    *The Court's Consideration of Sentencing Disparities*

Petitioner argues that defense counsel failed to object when this Court allegedly did not consider the need to avoid unwarranted sentence disparities among similarly situated defendants. At sentencing:

> A district court must begin the process by first calculating the applicable Guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the Guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the Guidelines.

*United States v. Levinson*, 543 F.3d 190, 194–95 (3d Cir. 2008) (citations omitted).  In determining the particular sentence to be imposed, § 3553(a) requires the Court to consider: (1) nature and circumstances of the offense and defendant's history and characteristics; (2) need to reflect the seriousness of the offense, to promote respect for the law, need to afford adequate deterrence to criminal conduct, protect public from further crimes of defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Commission; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities  among defendants with similar records who have been found guilty of similar conduct; and (7) need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(1)–(7).

Sentencing courts must give "meaningful consideration" to the factors in 18 U.S.C. § 3553(a).  *United States v. Olhovsky*, 562 F.3d 530, 546 (3d Cir. 2009).  "[T]he district court need not discuss and make findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing . . . ."  *United States v. Kononchuk*, 485 F.3d 199,

204 (3d Cir. 2007).   However, the Court must address colorable arguments regarding the applicability of the sentencing factors as part of its meaningful consideration.   *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010).

Here, the Court meaningfully considered the § 3553(a) factors.   The Court merely emphasized certain factors particular to Petitioner.   As explained at length above, this Court strongly considered an upward variance when discussing the § 3553(a) factors—and the Court made this possibility clear to defense counsel.   The Court noted:

> [T]he Court may use its discretion in deciding whether to depart from the range, or grant a variance weighing the factors provided in 18 United States Code Section 3553(a).   And as I said at outset of today's hearing that I seriously am contemplating an upward variance in this case, because of the horrendous and violent nature of the current offense, as well as the significant criminal history.
> . . .
>
> But let me say that there is no doubt in my mind that a sentence at the high end of 162 is appropriate for a number of circumstances and reasons that I am going to justify my sentence in a moment.   I must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.   Let me spend some time there.

(App'x at 167–168).

The Court then discussed the details of each bank robbery.   Those details are summarized above, so the Court will only briefly highlight certain relevant portions.   At sentencing the Court noted that, in the Greenwich Bank and Trust Company robbery, Petitioner "pulled a large black gun out of a gray Whole Foods shopping bag, pointed the weapon at AC and announc[ed] . . . 'This is a fucking robbery,'" and told AC not to include dye packs with the money or she would "'fucking shoot [her].'"   (*Id.* at 169).   Not satisfied with the amount of money she received, Petitioner stated that she "was going to shoot [AC], and that they were right outside."   (*Id.* at 170).

The Court explained that in the Glen Rock Savings Bank robbery, Petitioner yelled, "'Give me all

your money or I will fucking kill you.'"  (*Id.* at 170–171).  Petitioner also, upon leaving, instructed

the tellers to remain in the bank vault for five minutes.  (*Id.* at 171).  Finally, the Court discussed

the JP Morgan Chase robbery and explained that Petitioner ordered bank employees onto the floor

at gunpoint and advised them that "they" knew where the employees lived and would come to their

houses, kill them, and burn their houses down.  (*Id.* at 172).  The Court also explained that

Petitioner befriended AV, preyed upon his age and weaknesses, and stole close to $200,000 of his

life savings.  (*Id.* at 173).  Petitioner also stole from her own father and grandmother.  (*Id.*).

> The Court explained that she was addressing these specifics because:

> > [T]he record needs to reflect how violent all of these robberies were,
> > how they were, and again, I note you brandish a gun, you can
> > brandish a gun without saying the things that this woman said to these
> > people, without forcing them to do what she forced them to do,
> > without putting them in absolute [f]ear of their life . . . .  [Petitioner]
> > did probably, in my experience, one of the more brazen and
> > aggressive robberies I have seen to date.

(*Id.* at 172).  Later the Court said:

> > It is horrible to imagine what these [women] go through on a daily
> > basis, what they are forced to experience and [Petitioner] stood up
> > and said, the rape, once he raped me, 85 minutes, I couldn't go on. You
> > victimized tellers.  What you did to them for minutes, five
> > minutes, or longer, and what this man did to you, it doesn't make it
> > right.

(*Id.* at 174).  The Court further explained, "these [women] have to live with what you did to them,

how you brutalized them, how you tortured them."  (*Id.*).

> The Court noted that it was concerned that the sentence had to reflect the serious nature of

the offenses and promote respect for the law.  (*Id.* at 174–175).  On the record, the Court explained

it did not "believe that any sentence but the highest end of the range would promote respect for the

law.  You have managed in your criminal history, significant criminal history, to fail to comply

with every supervised release, or parole." (*Id.* at 175).  The Court then noted Petitioner's previous significant non-compliance with her conditions of release, including not paying restitution and opening multiple lines of credit.  (*Id.* at 175–176).  The Court informed Petitioner that the "days of [her] receiving breaks are over." (*Id.* at 177).

Petitioner argues that the Court's "sole reference to the several § 3553(a) factors . . . in no way discharged the judicial obligation to consider sentencing disparity."  (Mov. Br. at 53).  However, Petitioner admits that the Court is not required to address each factor, "as long as the record makes clear that the factors were have been considered." (*Id.* at 54).  But Petitioner argues there is nothing to indicate that the Court considered the disparity factor in § 3553(a)(6).  (*Id.*).

The Court disagrees.  First, the Court indicated that it was taking the § 3553(a) factors into account at sentencing.  *See United States v. Friedman*, 658 F.3d 342, 362 (3d Cir. 2011) (stating district court need not discuss and make findings as to each of the § 3553(a) factors as long as record makes clear factors were taken into account at sentencing).  Second, defense counsel did not make a colorable argument about § 3553(a)(6) that would have made this Court specifically address it at sentencing.  *See Friedman*, 658 F.3d at 362 (noting that court should respond to party's argument on one of the § 3553(a) factors when party makes a colorable argument).  Defense counsel made only a conclusory argument in the presentence memorandum that a "sentence at the low end of the advisory guideline range would not create 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" (App'x at 54).  Thus, the Court's duty to respond to a potential disparate sentence argument was never triggered.  *Friedman*, 658 F.3d at 362.  Third, Petitioner received a sentence within the guideline range.  "[W]ithin-guidelines sentences . . . generally do not lead to disparities requiring that a defendant be granted relief because 'avoidance of unwarranted disparities was clearly considered by the

Sentencing Commission when setting the Guidelines ranges.'" *United States v. Kluger*, 722 F.3d 549, 568–69 (3d Cir. 2013) (quoting *Gall v. United States*, 552 U.S. 38, 54 (2007)).

Thus, Defense counsel was not ineffective for failing to object that Court did not properly consider the need to avoid purported unwarranted sentencing disparities.  The Court adequately addressed the § 3553(a) factors and justified the high-end guidelines sentence, and in light of the Court's particular concerns about the particular defendant, such an objection would not have futile. *See Real v. Shannon*, 600 F.3d 302, 310 (3d Cir. 2010) (finding counsel not ineffective for failing to raise a meritless claim).

### ii.     *Defense Counsel's Advancement of the Sentencing Disparity Issue*

The second aspect of Petitioner's argument is that defense counsel was ineffective for failing to argue that the 162-month sentence amounted to an unwarranted disparate sentence. (Mov. Br. at 56).  Petitioner argues that defense counsel was ineffective "because she should have specifically cited several cases that illustrate that [Petitioner's] 162-month sentence constituted an unwarranted disparate sentence when compared to other similarly situated non-violent bank robbers."  (*Id.*).  Petitioner submits that defense counsel should have raised the following four cases to the Court's attention at sentencing:

> *United States v. Townsley, Jeffery* (14-cr-00146; District Pennsylvania, 2 cou[n]ts armed bank robbery, criminal history VI and offense level of 31: 151 months;
>
> *United States v. Swerdon, Joseph* (12-cr-00087; District Pennsylvania), 3 counts armed bank robbery, criminal history VI and offense level of 28: 94 months;
>
> *United States v. Frates, Steven* (14-cr-10046; District Massachusetts), 4 counts armed bank robbery, criminal history VI and offense level 23: 132 months;
>
> *United States v. Greer, Peter* (14-cr-0589; District of New Jersey), 5 counts armed bank robbery, criminal history of V and offense level of 25: 87 months.

(Mov. Br. at 57).

"A defendant challenging his sentence based on § 3553(a)(6) must show that his 'circumstances exactly paralleled' those of the defendants who received lower sentences." *United States v. Bannout*, 509 F. App'x 169, 172 (3d Cir. 2013) (quoting *United States v. Iglesias*, 535 F. 3d 150, 161 n.7 (3d Cir. 2008)); *see also United States v. Bard*, 625 F. App'x 57, 60 (3d Cir. 2015) (stating that § 3553(a)(6) "only requires the court to consider 'sentence disparities' among defendants who are similarly situated in all relevant respects" (citing *United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007))).  Furthermore, the Third Circuit has explained:

> That [an appellant] can find another case where a defendant charged with a somewhat similar crime and facing the same advisory sentencing range received a sentence outside of the applicable sentencing range does not make [defendant's] within-Guidelines sentence unreasonable. If that were the law, any sentence outside of the Guidelines range would set precedent for all future similarly convicted defendants. That is not, and cannot be, the law.

*United States v. Jimenez*, 513 F.3d 62, 91 (3d Cir. 2008).

Here, Petitioner has failed to meet her burden to show that her proposed cases involved circumstances that exactly paralleled her own—something she would need to do to show either deficient performance or prejudice.  Petitioner provides the Court with the offense level and criminal history category of each case, but she fails to inform the Court of—let alone submit evidence regarding—the circumstances involved in the crimes in those cases.  Importantly, and as stated above, at sentencing the Court noted the vicious and terrorizing nature of Petitioner's crimes when sentencing Petitioner.  The Court cannot assume, without evidence, that the cases cited by Petitioner "exactly parallel" the circumstances of Petitioner's case—in that they were similarly vicious and terrorizing.  Thus, Petitioner fails to "meet [her] burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness."

*Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).  For similar reasons, nor has she shown prejudice.

## IV.   EVIDENTIARY HEARING

On August 12, 2021, Petitioner filed a motion for an evidentiary hearing.  (D.E. No. 39). Section 2255 requires a district court to hold a prompt evidentiary hearing on a 2255 motion unless the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief.  28 U.S.C. § 2255; *see also Booth*, 432 F.3d at 545–46; *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.  "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).  As previously explained, the record conclusively demonstrates that Petitioner is not entitled to relief.  Therefore, the Court denies Petitioner's motion for an evidentiary hearing.  (D.E. No. 39).

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner may not appeal from a final order in a proceeding under § 2255 unless the Petitioner has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because Petitioner's claims are without merit, she has failed to make a substantial showing that she was denied a constitutional right.  In other

words, jurists of reason would not disagree with the above analysis.  Because Petitioner has failed

to make such a showing, no certificate of appealability will issue.

## VI.     CONCLUSION

For the above stated reasons, Petitioner's motion under § 2255 (D.E. No. 1) is **DENIED**

and a certificate of appealability shall **NOT ISSUE**.  Additionally, Petitioner's motion for an

evidentiary hearing (D.E. No. 39) is **DENIED**.  An appropriate Order accompanies this Opinion.


Dated: November 24, 2021                                              */s/Esther Salas*
                                                                      Esther Salas, U.S.D.J.